**BROWNIES CREEK COLLIERIES, INCORPORATED, Appellant,**

**v.**

**ASHER COAL MINING COMPANY et al., Appellees.**

Court of Appeals of Kentucky.

June 30, 1967.

James C. Helton, Pineville, James Clarence Evans, Farris, Evans & Evans, Nashville, Tenn., Bert T. Combs, Julius Rather, Lexington, for appellant.

Logan Patterson, Patterson & Berger, William S. Tribell, Pineville, for appellees.

CULLEN, Commissioner.

Asher Coal Mining Company (herein called Asher) is a corporation which leases coal lands. On September 5, 1959, Asher executed a "Colmar Lease" of about 4,300 acres of land to Bell Hi Coal Company. That company subsequently assigned the lease to appellees, Gibbs and Hart, who were engaged in mining and selling coal. On June 30, 1961, Asher leased to Gibbs and Hart approximately 6,000 acres of coal lands which are referred to herein as Hance Ridge property. This lease, among other things, provided that "This lease may not be transferred or assigned, either voluntarily or unvoluntarily without the written consent of lessor endorsed hereon, and any such transfer or assignment, if made, shall be subject to the terms hereof; * * *".

On November 22, 1961, Asher leased to the predecessor of Brownies Creek Collieries, Incorporated (herein called Brownies Creek) 4,300 acres known as the Jackson Mountain Boundary. The lease from Asher to Brownies Creek, among other things, contained the following language:

"OPTION AS TO ADJOINING PREMISES. Within two (2) years from the date of this Lease, Lessee shall have the option to lease from Lessor on the same terms and conditions except for minimum as contained herein the approximately 6,000 acres of land known as the Hance Ridge property and presently leased to Leslie Gibbs and Paul Hart by lease dated June 30, 1961, to which Lease reference is made for a complete description of said land, provided that said Lease is terminated for any reason. Should said termination occur more than two years from the date of this lease, Lessee shall have the right of first refusal to lease said premises."

There were no other provisions contained in that lease either with respect to how the right of first refusal would be asserted and exercised or with respect to the terms of the new lease which Brownies Creek would make with Asher.

It is claimed, and not denied, that all the parties to leases subsequently referred to herein had notice of Brownies Creek's right of first refusal to lease the Hance Ridge property.

In December 1962 Gibbs and Hart agreed between themselves that they would divide their operation. Gibbs took over the Colmar property and Hart took over the Hance Ridge property. This was done without either being released on their obligation to Asher.

On September 9, 1965, Gibbs and Hart "assigned" the Hance Ridge lease to Varilla Coal Company (herein called Varilla) with Asher joining in to give its approval to the assignment. Varilla is a corporation engaged in mining and selling coal and is a wholly owned subsidiary of Jewell Ridge Coal Sales Company also a corporation, which is engaged in selling coal but not in mining. The assignment contained substantial changes in the terms of the original instrument, and it is contended by Brownies Creek that it effectively created a new lease.

On September 10, 1965, Varilla subleased to Hart the right to develop a deep-mining

operation on the Hance Ridge property. Asher joined in that sublease " * * * for the purpose of consenting thereto."

Asher, Varilla, Gibbs and Hart filed suit in the Bell Circuit Court against Brownies Creek in which they related the transactions hereinabove referred to and stated that Brownies Creek was claiming that these transactions were in violation of its rights and interests. They alleged that an actual controversy existed between the parties and they demanded a declaration of rights. Brownies Creek pleaded that it was contending that the lease with Varilla and the activities pursuant thereto were in violation of " * * * the right of first refusal to lease said premises." It too demanded a declaration of rights, that the original lease of June 30, 1961, from Asher to Gibbs and Hart be declared to have been terminated, and that Brownies Creek be declared to have the right to lease the Hance Ridge property on substantially the same terms and conditions contained in the lease to Varilla and the sublease to Hart but " * * subject to such terms and conditions as the court determines just."

Asher moved for summary judgment and filed affidavits in support of its motion. CR 56.01. A counter-affidavit was filed by Brownies Creek. The lower court found that there was no genuine issue of a material fact and held that there was no such termination of the lease dated June 30, 1961, from Varilla to Gibbs and Hart · " * * * as in the contemplation of the contracting parties would entitle the defendant (Brownies Creek) to a 'First refusal' of the right acquired and obligations assumed by Varilla Coal Company, which said rights and obligations, incidentally, the defendant (Brownies Creek) has made no unqualified offer to accept and undertake." It held that the lease dated June 30, 1961, and the transactions pursuant thereto were not " * * * violative or in derogation of any contractual rights of (Brownies Creek) asserted in the proceedings."

It is our opinion, for the reasons hereinafter stated, that the trial court erred in holding that there had been no termination of the Hance Ridge lease.

In the "assignment" transaction Gibbs and Hart were eliminated except that Hart was given an overriding royalty and by separate instrument was given a sublease of the deep-mining operations. A substantial amount of money representing past-due royalties owed by Gibbs and Hart to Asher was paid by Varilla.

The "assignment" document changed materially almost all of the major provisions of the original lease, including the basic term; the renewal options, the amount of basic and premium royalties to be paid, and the amount of minimum production to be guaranteed. It eliminated "wheeling charges" for coal from other tracts; it eliminated a tipple charge; it inserted a right of termination and a right to remove improvements; it eliminated auger rights; and made changes in numerous other terms.

From practically every standpoint the Varilla "assignment" represented a completely new deal. The old lease was to all intents and purposes wiped out and a new lease made. We think that this transaction must be considered to have been a "termination" of the old lease within the meaning of the contract between Asher and Brownies Creek. The fact that the termination of the old lease occurred simultaneously with this initiation of the new lease is in our opinion immaterial. See 32 Am.Jur., Landlord and Tenant, section 910, page 769.

We come now to the question of the validity of the right of refusal granted to the appellant.

 The right of first refusal which is sometimes called the right of pre-emption has been recognized as a valid provision. 51 C.J.S. Landlord and Tenant § 80, page 631; Sinclair Ref. Co. v. Allbritton, 147 Tex. 468, 218 S.W.2d 185; 8 A.L.R.2d 595. Imperial Refineries Corporation v. Mor-

rissey, 254 Iowa 934, 119 N.W.2d 872. A contract provision giving simply the "right of first refusal" (as here), without any qualifying terms, means according to general custom and practice that the holder has the right to elect to take the property *at the same price and on the same terms and conditions* as those of an offer by a third person that the owner is willing to accept. Corbin on Contracts, Vol. 1A, section 261, pp. 470, 477, 478.[1] The agreement is not void for failure to specify definite terms and conditions of the acquisition, because they will be supplied by the third person's offer. However, this presupposes that the holder of the right of first refusal can and will take the property on the *same* terms and conditions as set out in the third person's offer. Of course if the holder of the right of first refusal cannot meet *exactly* the terms and conditions of the third person's offer, minor variations which obviously constitute no substantial departure should be allowed. And defeat of the right of refusal should not be allowed by use of special, peculiar terms or conditions not made in good faith. But if a material variation from bona fide terms and conditions should be necessary the right of refusal will fail as impossible of performance. As so many times said, the cy-pres doctrine does not apply to ordinary contracts. See Kentucky Water Service Co. v. City of Middlesboro, Ky., 247 S.W.2d 40.

 In its pleadings in the instant case Brownies Creek alleged that it can meet "substantially" those terms and conditions. The terms, if any, which it cannot meet exactly and the extent of departure which will be necessary have not been brought out. In our opinion the pleadings sufficiently raised the issue of whether Brownies Creek is ready, willing and able to meet the terms and conditions of the Varilla transaction with no material variation. That

1. It would be preferable, rather than a resort to custom and practice, that a right of first refusal be expressed in such manner that a stranger to the transaction, upon examining the instrument from

issue should be adjudicated in the trial court, and if the answer is in the affirmative Brownies Creek should be given appropriate relief.

The judgment is reversed with directions for further proceedings in conformity with this opinion.

WILLIAMS, C. J., and MILLIKEN, PALMORE and STEINFELD, JJ., concur.

HILL and MONTGOMERY, JJ., dissent on the ground that the lease was not terminated.

which the right arises, may ascertain when the right arises, how it is to be exercised, and if asserted what the result will be.