TORREY DELIVERY, INC., Respondent, v CHAUTAUQUA TRUCK SALES AND SERVICE, INC., (Formerly CHAUTAUQUA WHITE SERVICE, INC.) et al., Appellants.

Fourth Department, April 17, 1975

*Johnson, Peterson, Tener & Anderson (Ronald W. Malin* of counsel), for appellants.

*Lippes, Kaminsky, Silverstein & Sushek (Henry Sushek* of counsel), for respondent.

MAHONEY, J. Defendants appeal from that portion of an order of Special Term which denied their motion to dismiss plaintiff's complaint for failure to state a cause of action and granted plaintiff's cross motion to permit service of an amended complaint.

The operative allegations contained in plaintiff's original complaint, as well as its amended complaint, are as follows: Plaintiff, Torrey Delivery, Inc. (Torrey), in April, 1972 entered into a two-year term lease agreement, as tenant, with Chautauqua White Service, Inc. (Chautauqua White), as owner and landlord, for premises at 219 Brigham Road in the City of Dunkirk, New York. The lease agreement granted to Torrey an option to purchase the premises (for the purposes of this appeal conceded to include the entire premises) at any time during the term of the lease; with further provision specifying that notification be given to Torrey that sale of the property was planned and giving Torrey a time within which to exercise its option. The lease agreement was negotiated on behalf of Torrey by one, Richard E. Centner, then an officer and employee of Torrey. The sole stockholder of Chautauqua White was one, John W. Coogan, Sr. The only asset of the latter corporation was the subject property. In addition, Coogan was the sole stockholder of Chautauqua Truck Sales and Service, Inc. (Chautauqua Truck).

Coogan died on March 23, 1972 and the stock of Chautauqua Truck was sold by the estate executors to Centner who had then resigned as an officer and employee of Torrey. Thereafter, the stock of Chautauqua White was purchased by Chautauqua Truck from the executors of the Coogan estate. A merger of the two corporations was then accomplished by the filing of a certificate of merger pursuant to section 905 of the Business Corporation Law, effective October 31, 1972, with Chautauqua Truck being identified as the surviving corporation.

On November 17, 1972 a warranty deed dated November 1, 1972, executed by Centner as president of Chautauqua Truck (formerly Chautauqua White), was recorded in the Chautauqua County Clerk's office reciting conveyance of the subject property to Chautauqua Truck with assumption by Chautauqua Truck of the existing mortgage thereon.

Torrey's complaint alleges, in effect, that because both defendants had knowledge of the option provision contained in Torrey's lease agreement, the corporate stock transactions which ultimately vested ownership of the subject property in Chautauqua Truck constituted "a sale within the meaning of the agreement * * * directly or indirectly", requiring notification and accord of privileges provided to Torrey under the option provision of its lease agreement. It further alleges that

despite Torrey's demand for notice of terms and conditions of such "sale", defendants have failed to provide such information and have only advised Torrey that its option provision will be honored by Chautauqua Truck in the event that it elected to sell the property in the future. Torrey's initial complaint seeks specific performance by defendants of the option provisions with the amended complaint seeking alternate money damages.

In considering a motion to dismiss a complaint for failure to state a cause of action, the challenged pleading must be liberally construed (CPLR 3026; *Walkovszky v Carlton,* 18 NY2d 414, 419; *Condon v Associated Hosp. Serv.,* 287 NY 411, 414; *Wainwright & Page v Burr & McAuley,* 272 NY 130, 132). Upon such motion the court accepts "as true the material allegations of fact contained in the complaint and any reasonable inference that may be drawn therefrom" *(Garvin v Garvin,* 306 NY 118, 120; *St. Regis Tribe of Mohawk Indians v State of New York,* 5 NY2d 24, 36). If any cause of action can be spelled out from the facts alleged, the motion must be denied *(Dulberg v Mock,* 1 NY2d 54; *Foley v D'Agostino,* 21 AD2d 60, 64–65). The court, however, does not assume the correctness of any legal conclusion drawn by the pleader *(Kip v New York and Harlem R.R. Co.,* 67 NY 227, 230; *Sleepy Hollow Val. Committee v McMorran,* 27 AD2d 665; *City of Albany v McMorran,* 16 AD2d 1021, 1022).

Upon analysis of the initial pleading, as well as the amended complaint, plaintiff premises its legal claim on the contractual right of first refusal contained in its lease agreement. If the facts alleged can arguably constitute a breach of this lease clause, the pleading must be sustained. In view of the apparent thrust of plaintiff's allegations, predicating relief upon contractual rights relative to sale of the subject property, distinction between property owned by a corporation and control of such corporation and its successor corporate forms must be recognized. It has long been the law in New York that a "corporation in respect of corporate property and rights is entirely distinct from the stockholders who are the ultimate or equitable owners of its assets; that even complete ownership of capital stock does not operate to transfer the title to corporate property and that ownership of capital stock is by no means identical with or equivalent to ownership of corporate property." *(Brock v Poor,* 216 NY 387, 401.) Ownership of capital stock being distinct from ownership of corporate prop-

erty, it follows that the sale of such stock is not a sale of corporate property. In the instant case, fundamentally, Torrey did not contract with Coogan personally but rather with Chautauqua White. The fact that control of Chautauqua White passed from Coogan to his estate and eventually to Centner did not change the ownership of the subject property. Throughout all these transactions the subject property continued to be the property of Chautauqua White. Thus, the sale of Chautauqua White stock to the Centner controlled Chautauqua Truck did not constitute a "proposed sale" of the "demised premises" within the meaning of the lease option provisions.

Nor can the corporate merger of the two defendant corporations constitute such a sale. Technically, a merger is a corporate reorganization (Business Corporation Law, §§ 901, 902, 905). It is the corporate form of existence which is affected, not the corporate property. The changes in Chautauqua White's corporate structure, brought about by its merger into Chautauqua Truck, did not entail any separation or divestment of corporate assets from Chautauqua White. Rather, Chautauqua Truck became the successor to all rights and obligations of Chautauqua White as if Chautauqua White continued an independent existence with Chautauqua Truck (Business Corporation Law, § 906; see, also, *Platt Corp. v Platt,* 21 AD2d 116, affd. 15 NY2d 705; *Bank of United States v Glickman,* 241 App Div 92, affd. 265 NY 539; *Albert v Salzman,* 41 AD2d 501, lv. to app. den. 33 NY2d 520). Consequently, the corporate merger cannot be viewed as divesting or separating control of the subject property from the corporate entity of Chautauqua White. Thus the merger was not a "proposed sale" within the intendment of the lease option clause.

As for the recording of a deed of conveyance, section 906 (subd [b], par [2]) of the Business Corporation Law specifically provides that all real property of the constituent corporations shall vest in the surviving corporations "without further act or deed." Therefore, on the effective date of the merger title to the subject property vested in Chautauqua Truck by operation of law. The deed of conveyance alleged by Torrey, being after the effective date of the merger, evidenced no divestiture of corporate property. Title remained as always in the corporate entity that was Chautauqua White and had become a part of the new surviving entity, Chautauqua Truck. The deed of

conveyance was but an explicit recording of what already had happened by operation of law at the effective date of the merger. Therefore, this recording transaction cannot be said to be a "proposed sale" within the meaning of the lease clause.

Inasmuch as neither the complaint nor amended complaint effectively alleges a "proposed sale" of the subject property within the meaning of the lease provision, there is no cause of action stated for a breach of the lease. Nor can a cause of action for inducement to commit a breach of the lease provision or tortious interference with the contractual right of plaintiff be spelled out from the complaint, absent any breach of the lease. "An essential element of the * * * [cause of action] * * * is the breach of the contract * * *. [The] cause of action must fail if there was no such breach." *(Israel v Wood Dolson Co.,* 1 NY2d 116, 120.)

Finally, plaintiff's contention that utilization of the doctrine of "piercing the corporate veil" will sustain a cause of action, under the facts alleged in the complaint, is not persuasive. The facts as alleged, even extending every inference to be drawn therefrom, fail to approach requisite allegations of fraud or wrongdoing (see generally, *Walkovszky v Carlton,* 18 NY2d 414). In addition, the individual party alluded to as having allegedly engaged in wrongdoing in connection with the various stock acquisitions and corporate activities is not a party to this action and, hence, application of said doctrine is foreclosed.

It must, therefore, be concluded that the plaintiff's complaint and amended complaint fail to state a cause of action cognizable in law and that Special Term's order denying defendants' motion for dismissal was in error and should be reversed and the motion granted.

MARSH, P.J., MOULE, SIMONS and GOLDMAN, JJ., concur.

Order unanimously reversed with costs, motion granted and complaint dismissed.