Frederick S. PRINCE, Jr., John H. Barnard, Paul M. Dougan, Donald K. Irvine, John B. Prince, James M. Steele, Wallace A. Wright, Jr., Howells Investment, Robert M. Johnson, Barbara B. Prince, dba Trolley Square Associates, Plaintiffs and Appellants,

v.

ELM INVESTMENT CO., INC., a Utah corporation, Boyer-Gardner Partnership Co., a Utah general partnership, Boyer-Madsen Seventh East Partnership, a Utah general partnership, H. Roger Boyer, a Utah resident, and Kem C. Gardner, a Utah resident, Defendants and Respondents.

No. 17547.

Supreme Court of Utah.

June 4, 1982.

John P. Ashton, James A. Boevers, Salt Lake City, for plaintiffs and appellants.

Bruce A. Maak, Salt Lake City, for Elm Inv. and Boyer-Madsen.

C. Keith Rooker, Salt Lake City, for Boyer-Gardner.

OAKS, Justice:

This is a suit by a lessee against a lessor for specific performance and damages for breach of a right of first refusal clause in the lease. The alleged breach occurred when the lessor conveyed the leased property to a partnership in which the lessor held a fifty-one percent interest, without first offering the property to the lessee. The district court gave summary judgment for the lessor, and the lessee has appealed.

In 1972, Elm Investment Company (Elm or lessor), a corporation, leased to Trolley Square Associates (Trolley or lessee), a partnership, certain real property located at 474 South 700 East in Salt Lake City, across the street from a shopping center developed and owned by Trolley. The lease contained the following provision:

> TENTH: Tenant shall have the first right of refusal to purchase this property and adjacent properties owned by Elm Investment Co., Inc., if said properties are offered for sale during the term of this Lease. . . .

Although the lease was to expire November 15, 1979, the lease provided that "[t]enant's right of first refusal shall continue until November 15, 1980."

On May 4, 1979, Elm and Boyer-Gardner Partnership Co. (Boyer-Gardner), a partnership, executed a written agreement forming a general partnership called Boyer-Madsen Seventh East Partnership (Partnership), to acquire, improve, lease, and manage the 474 South 700 East property. Elm owned fifty-one percent and Boyer-Gardner owned forty-nine percent of the Partnership. Elm agreed to contribute the property to the Partnership,[1] and Boyer-Gardner agreed to finance and construct an office building, perform day-to-day management, and assure Elm $47,000 per year as a "guaranteed payment" or "preference." Elm retained a right to remove Boyer-Gardner as day-to-day manager upon certain conditions. The agreement also specified that "the overall management and control of the Partnership and its business shall be vested jointly in the Partners, and all decisions and actions shall require the unanimous consent of the Partners."

Elm did not provide Trolley any opportunity to purchase the leased property or match the Boyer-Gardner offer. After learning of the formation of the Partnership, Trolley sought to assert its right of first refusal, without success.

Trolley later commenced this suit, claiming that Elm's contributing the leased property to the Partnership violated Trolley's right of first refusal. Count I of Trolley's amended complaint sought specific performance of the right of first refusal or, in the alternative, compensatory damages for breach of the agreement. Count II, which alleged that defendants Boyer-Gardner and its two general partners intentionally interfered with Trolley's right of first refusal, sought compensatory and punitive damages. After some preliminary discovery, Elm and its codefendants moved for summary judgment on two grounds: (1) the transfer of

---

1. Elm conveyed the leased property to the Partnership by special warranty deed on January 7, 1980, one week after this action was filed and approximately ten months before the expiration of Trolley's right of first refusal.

the leased property to the Partnership was not a "sale" that gave rise to any right of first refusal under the lease, and (2) Trolley could not provide Elm the unique consideration that Elm received from Boyer-Gardner in exchange for conveying the leased property to the Partnership. The district court granted summary judgment and dismissed Trolley's complaint with prejudice and upon the merits.

Trolley's appeal joins issue on both of the grounds Elm and its codefendants argued in obtaining summary judgment. First, Trolley contends that Elm's transfer to the Partnership was a sale as a matter of law or, in the alternative, that whether it was a sale at least presents a genuine issue of material fact making summary judgment inappropriate.[2] Second, Trolley contends that a genuine issue of material fact exists as to whether Trolley could have matched the consideration offered by Boyer-Gardner. To win a reversal, Trolley must prevail on both issues.

## I.

### WAS THE PARTNERSHIP TRANSFER A "SALE"?

Trolley's right to purchase the leased property is triggered only by Elm's offering it "for sale." Consequently, if Elm's agreeing to contribute the property to the Partnership or its subsequent conveyance thereto was not an offer of sale or a sale, Trolley's right to purchase did not arise and the summary judgment against plaintiff Trolley was proper on this ground.

Whether a transfer of property from a lessor to a partnership in which the lessor owns a majority interest but whose management ·decisions must be made unanimously is a "sale" for purposes of a lease provision granting the lessee a right of first refusal is a question of first impression in Utah and, so far as we can ascertain, has not been addressed in any other jurisdiction.

In support of the district court's judgment, Elm and its codefendants ·argue that Trolley's right of first refusal arises only upon a "sale through which the lessor transfers *all* of its interest in the subject property to a third party and divests itself completely of control with respect to the property." Defendants cite five categories of cases in which a partial transfer or a reorganization of the form of ownership was held not to be a sale for purposes of a right of first refusal. In the first, a corporate lessor transferred the leased property to a second corporation whose stockholders were essentially identical to the transferor's. *Sand v. London & Co.*, 39 N.J.Super. 513, 121 A.2d 559 (1956). The second group consists of cases involving the incorporation of a group of lessors. *Straley v. Osborne*, 262 Md. 514, 278 A.2d 64 (1971); *Kroehnke v. Zimmerman*, 171 Colo. 365, 467 P.2d 265 (1970). In the third category, the stockholders in a lessor corporation conveyed the stock to themselves as a partnership. *Midland Container Corp. v. Sophia Realty Corp.*, 65 A.D.2d 784, 410 N.Y.S.2d 638 (1978). A fourth circumstance involves one or more lessors selling their interest to fellow lessors. *Rogers v. Neiman*, 187 Neb. 582, 193 N.W.2d 266 (1971). The fifth group of cases involves the sale of all the stock of a corporate lessor. *K. C. S., Ltd. v. East Main Street Land Development Corp.*, 40 Md.App. 196, 388 A.2d 181 (1978); *Cruising World, Inc. v. Westermeyer*, Fla.App., 351 So.2d 371 (1977); *Torrey Delivery, Inc. v. Chautauqua Truck Sales & Service, Inc.*, 47 A.D.2d 279, 366 N.Y.S.2d 506 (1975).

None of the foregoing cases is a persuasive precedent for the case at bar. A common characteristic of the first three categories is that the transfer or reorganization achieved no change in the substance of control of the parties who owned the leased property. The fourth circumstance involves merely an adjustment of interests among multiple lessors without introducing any new lessor. The fifth category of cases

---

**2.** Utah R.Civ.P. 56(c); *Bihlmaier v. Carson*, Utah, 603 P.2d 790 (1979); *Livingston Industries, Inc. v. Walker Bank & Trust Co.*, Utah, 565 P.2d 1117 (1977); *Russell v. Park City Utah Corp.*, 29 Utah 2d 184, 506 P.2d 1274 (1973).

does not involve a change in lessor at all. In view of the ready severability and alienability of corporate stock—and indeed the inevitability of a turnover in the stockholders of a corporation of perpetual duration—it would in most cases be unrealistic and unfair not to consider the lessor to be the corporation itself, not its stockholders. A sale of stock should not, therefore, be equated with the sale of a corporate asset.[3]

In any event, the present case, in which a corporate lessor transferred the leased property to a partnership in which entirely new parties held a forty-nine percent interest and an effective veto over management decisions, is easily distinguished from the cited cases in terms of actual ownership and practical control.

■ All of the cases cited by Elm (discussed above), as well as the cases cited by Trolley,[4] can be harmonized under a single rule: for purposes of a right of first refusal, a "sale" occurs upon the transfer (a) for value (b) of a significant interest in the subject property (c) to a stranger to the lease, (d) who thereby gains substantial control over the leased property.

■ Each of these four elements of a "sale" is present in the instant case. (a) The transfer was for value. (b) Because of its forty-nine percent interest in the Partnership, Elm transferred and Boyer-Gardner received a significant interest in the leased property. (c) Boyer-Gardner was a stranger to the Elm-Trolley lease. (d) Because of the terms of the Partnership, Boyer-Gardner gained substantial control (in effect, a veto power) over the leased property as a result of the transfer.

The holder of a right of first refusal has negotiated for a right to purchase ahead of any other buyer if the promisor-owner decides to sell. We see no reason to limit the application of that right to a sale of the promisor-owner's entire interest. The more reasonable approach is to allow the holder to exercise its right of first refusal to the extent of any significant transfer of ownership or control to an unrelated third party.[5]

We therefore conclude as a matter of law that the transfer of the leased property from Elm to the Partnership was a "sale" for purposes of the right of first refusal held by Trolley. The summary judgment cannot be sustained on this issue.

## II.

## WAS THE PROMISEE PRECLUDED FROM MATCHING THE OFFER?

Under the right of first refusal, Trolley had a right to purchase the leased property or an interest therein on terms that matched or exceeded those offered by the prospective purchaser. The second issue in this appeal is whether, as a matter of law, Trolley was incapable of matching the terms offered by Boyer-Gardner in exchange for an interest in the Partnership.

Elm and its codefendants argue that "[t]he bundle of consideration that [Elm] received from [Boyer-Gardner] is unique and cannot be duplicated as a matter of law." They cite numerous characteristics of Boyer and Gardner—their reputation, expertise and experience in developing office buildings, success in development of

3. Although a transfer of corporate stock to a stranger to the lease may not be a "sale," and a transfer from a corporation to its stockholders (or vice versa) may not be a "sale," there would probably be a sale if these two steps occurred in sequence according to a pre-arranged plan. Otherwise, a lessor could incorporate and sell the corporation's stock to a buyer, who could then sell the stock to himself individually, and the parties would have accomplished in a step transaction what they could not have accomplished directly.

4. In *Colonie Motors, Inc. v. Heritage Corp. of New York*, 61 A.D.2d 1105, 403 N.Y.S.2d 574

(1978), and *Meyer v. Warner*, 104 Ariz. 44, 448 P.2d 394 (1968), the conveyance of an undivided one-half interest in the leased property was held to be a sale for purposes of the tenant's right of first refusal. Trolley also cites *Wilson v. Grey*, Ky., 560 S.W.2d 561 (1978), where the court found no sale in the transfer of a property interest from one of three lessors to another since no new party had been introduced as a lessor.

5. This construction accords with our construction of similar terms in an acceleration clause. *C & J Industries, Inc. v. Bailey*, Utah, 618 P.2d 58 (1980).

real estate, integrity, business history, business contacts, financial strength, effective organization, and personal compatibility with Elm—as "material inducements" for Elm to enter the Partnership. They conclude that because a partnership relationship is intensely personal, partners are not fungible and the right of first refusal provision in the lease should not be interpreted to permit Trolley to force itself upon Elm as an unwanted partner.

Trolley answers by pointing to a provision in the Partnership Agreement between Elm and Boyer-Gardner which permits either partner to transfer its partnership interest to a third party who would then "assume the obligations and liabilities of the Selling Partner ...." Trolley argues that Elm cannot consistently maintain that Boyer-Gardner's attractions are uniquely desirable and at the same time execute an Agreement that allows Boyer-Gardner to sell its interest in the Partnership to another party.[6]

Trolley contends that whether it can match Boyer-Gardner's offer presents a genuine issue of material fact, and urges that it is entitled to an opportunity to demonstrate that it possesses qualities equivalent to those of Boyer-Gardner.

Both parties rely on *Weber Meadow-View Corp. v. Wilde*, Utah, 575 P.2d 1053 (1978). In that case, Wilde granted Weber Meadow-View a right of first refusal in a tract of land. Thereafter, a church offered to purchase the property from Wilde for $200,000, which was to be paid in part by the conveyance of "a particular home in the town of Oakley, stated to be worth $48,000," with the balance in cash. When Wilde submitted that offer to Weber for its consideration, Weber offered to purchase the property for $200,000, to be paid in part by the conveyance of any piece of real property of Wilde's choice with a value of up to $50,000, and the balance in cash. Wilde then accepted the church's offer, and Weber sued to enforce its right of first refusal.

In holding that Wilde, the promisor, was free to accept the church's offer notwithstanding the right of first refusal, this Court explained:

> [T]he decision as to both the time and the terms upon which [Wilde] would sell her property remains her exclusive prerogative so long as she acts in good faith and without any ulterior purpose to defeat the right of [Weber]. This freedom of choice of [Wilde] is not diminished or adversely affected because a substantial part of the consideration for which she decides to sell is some unique chattel or parcel of property.

*Id.* at 1055. The Court characterized as "not entirely without reason" the argument that its holding would permit a property owner to demand "one particular finger ring, an old hat, or any other unique item which the [promisee] could not obtain, and thus defeat" the promisee's right of first refusal. *Id.* at 1054. On the other hand, the Court held the property owner's prerogative to insist on payment with a unique object is enforceable only "so long as she acts in good faith and without any ulterior purpose to defeat the right of the [promisee]." *Id.* at 1055.

The question of good faith was not an issue in *Weber Meadow-View Corp. v. Wilde*, as the Court was careful to observe:

> The significant fact here is that the plaintiff makes no claim that there was any such subterfuge or collusion. In response to the court's question, its counsel expressly stated that it did not claim any collusion or bad faith ....

*Id.* In the instant case, Trolley does allege bad faith. In contrast to Wilde, who entertained and apparently weighed an offer from the promisee before rejecting it, Trolley alleges that Elm executed the Partnership Agreement without prior notice to Trolley and that, once Trolley learned of the Partnership, Elm refused to entertain a competing offer from Trolley. Trolley contends that these actions raise the possibility that Elm did not act "in good faith and

---

**6.** Under the Partnership Agreement, any sale of an interest in the Partnership was, however, subject to a right of first refusal in the nonselling partner.

without any ulterior purpose to defeat the right" of first refusal held by Trolley. We agree that this difference prevents *Weber Meadow-View* from automatically dictating a judgment in Elm's favor in this case.

■ Where a contract provides that the matter of approval of performance is reserved to a party, he must "act fairly and in good faith in exercising that right. He has no right to withhold arbitrarily his approval; there must be a reasonable justification for doing so." *William G. Vandever & Co. v. Black*, 645 P.2d 637 (1982); *W. P. Harlin Construction Co. v. Utah State Road Commission*, 19 Utah 2d 364, 366, 431 P.2d 792, 793 (1967). Similarly, once the promisee of a right of first refusal has challenged the seller's decision as arbitrary or lacking in good faith, the seller must articulate a "reasonable justification" for his actions. Merely asserting the uniqueness of the third party's offer is not a sufficient explanation since, except where both offers are for immediate payment in cash, no two offers are ever identical. A ruling that a property owner could establish a reasonable basis for accepting the third party's offer merely by asserting that it was unique or distinguishable would render illusory the good-faith requirement imposed in *Weber Meadow-View* and the other cases cited above. As stated by the Kentucky Supreme Court,

> [I]f the holder of the right of first refusal cannot meet *exactly* the terms and conditions of the third person's offer, minor variations which obviously constitute no substantial departure should be allowed. And defeat of the right of refusal should not be allowed by use of special, peculiar terms or conditions not made in good faith....

*Brownies Creek Collieries, Inc. v. Asher Coal Mining Co.*, Ky., 417 S.W.2d 249, 252 (1967) (emphasis in original).[7] Thus, the inclusion of a "finger ring" or an "old hat" may be a sufficient basis to distinguish one offer from another, but only where the seller supplies a reasonable justification for the distinction.

■ Whether a justification is reasonable must be determined in light of the circumstances of the particular case. For example, where the third-party offer includes a house that the seller intends to use as a personal residence, the seller's personal preference for that house as a basis for rejecting the promisee-rightholder's offer might be eminently reasonable. On the other hand, if the seller intended to use the offered house as a rental property, an explanation in commercial terms is probably required to meet the reasonableness standard.

■ Where, as here, the consideration for the proposed sale is an interest in a commercial partnership, the decision whether to accept the third party's offer or the alternative offer from the promisee of the right of first refusal is not purely "personal," as the dissent urges. Competing offers of this nature are commercial proposals, and can be evaluated against ascertainable commercial standards. The fact that this evaluation might force the seller either to enter into a partnership relationship with the promisee rather than the third party or to refrain from selling altogether is a foreseeable consequence of the seller's agreement to a right of first refusal. A rule permitting the seller to choose between competing offers on the basis of personal preference would allow the third party to nullify the right of first refusal merely by including a partnership element in its offer. In this and other ways, such a rule would render the court powerless to fulfill its obligation under *Weber Meadow-View* to prevent the seller from engaging in "subterfuge or devious means" in furtherance of an "ulterior purpose to defeat the right of the [promisee]." *Weber Meadow-View Corp. v. Wilde*, 575 P.2d at 1055.

---

7. Nor is a seller justified in rejecting the offer submitted by the holder of the right of first refusal solely because it deviates from the third party's offer in some material way. A seller is not entitled to reject materially *different* offers, only materially *inferior* ones; in order to prevail, the rightholder need not submit an identical offer, only an equally desirable one. Whether a rightholder's offer is materially inferior is a question of fact.

In sum, in order to sell property burdened with a right of first refusal a seller must (1) give the promisee of the right of first refusal notice of the third party's offer and his intention to accept that offer; (2) allow the promisee to submit a competing offer; and (3) reject the promisee's offer, if any, only on the basis of a reasonable justification.

Under the principles discussed in this opinion, it is clear that Trolley is not precluded as a matter of law from matching the terms offered to the seller by Boyer-Gardner. The summary judgment for Elm (seller) and its co-defendants is therefore reversed and the case is remanded for further proceedings consistent with this opinion. Costs to appellants.

STEWART and HOWE, JJ., and JAMES S. SAWAYA, District Judge, concur.

DURHAM, J., not participating.

HALL, Chief Justice (dissenting):

The plain and unambiguous terms of the agreement between Elm and Trolley leave no room for judicial interpretation. Elm simply afforded Trolley "the first right to purchase . . . if said properties are offered for sale."

To conclude that Elm's transfer of its property to a partnership formed for the purpose of developing the property is a "sale" subject to Trolley's first right of refusal does violence to the expressed intentions of the parties. To further conclude that Trolley may now impose itself upon Elm as an unwanted partner was certainly not within the contemplation of the parties. It is also at odds with the very nature of a partnership.

As acknowledged in the majority opinion, a partnership is an intensely personal and private contractual relationship. Notwithstanding any showing Trolley might be able to make of its acumen as a developer as compared to that of Boyer-Gardner, the decision of Elm to accept or reject Trolley as a partner remains a personal one, and not one upon which this Court can impose an objective standard.

In support of its conclusion that a "sale" occurred, the main opinion recites that the partnership agreement between Elm and Boyer-Gardner permits either partner to transfer its partnership interest to a third party. However, no solace is to be found therein for the agreement further provides that any such sale of an interest in the partnership is subject to a right of first refusal in the other partner. It is thus to be seen that the restriction thereby placed upon alienation affords Elm the right to control who its new partner is to be, or for that matter, if it is to have one at all, because it could simply buy the interest of Boyer-Gardner and dissolve the partnership.

I would affirm the judgment of the trial court.