LaROSE MARKET, INC v SYLVAN CENTER, INC

Docket No. 155517. Submitted October 13, 1994, at Lansing. Decided March 6, 1995, at 9:35 A.M.

LaRose Market, Inc., brought an action in the Oakland Circuit Court against Sylvan Center, Inc., seeking specific performance of a lease agreement that granted the plaintiff a right of first refusal in the event of a sale of the realty the plaintiff leased from the defendant. The plaintiff alleged that it should be able to exercise the right of first refusal following the sale of all of the defendant's stock to one purchaser. The court, Robert L. Templin, J., granted summary disposition for the defendant, ruling that the plaintiff had failed to state a claim upon which relief could be granted, but denied the defendant's request for costs and attorney fees, which were sought on the basis that the plaintiff's action was frivolous. The plaintiff appealed, and the defendant cross appealed.

The Court of Appeals held:

1. The sale of all of a corporate lessor's stock does not constitute a sale of the corporation's real property and does not trigger any right of first refusal granted to the lessee.

2. Equitable relief is not available in the absence of a showing that the sale of the defendant's stock was the first step in a prearranged plan to deprive the plaintiff of its right of first refusal, with the second step being a conveyance of the leased premises from the defendant to the person who purchased all of the defendant's stock.

3. The defendant's corporate veil cannot be pierced in the absence of proof that the defendant's corporate status was used to commit a fraud or wrong or that the plaintiff has suffered an unjust loss or injury.

4. The trial court, in denying the defendant's motion for costs

References

Am Jur 2d, Corporations §§ 43, 48; Costs § 25.5; Landlord and Tenant §§ 368, 371.

Landlord and tenant: What amounts to "sale" of property for purposes of provision giving tenant right of first refusal if landlord desires to sell. 70 ALR3d 203.

and attorney fees, did not clearly err in ruling that the plaintiff's action was not frivolous.

Affirmed.

1. LANDLORD AND TENANT — SALES OF LEASED PREMISES — CORPORATE LANDLORDS — TENANTS' RIGHTS OF FIRST REFUSAL.

A corporate landlord that grants a tenant a right of first refusal in the event of a sale of the leased premises does not provide the tenant an opportunity to invoke the right where the landlord merely sells all of its corporate stock.

2. CORPORATION — PIERCING OF CORPORATE VEIL.

The corporate veil may be pierced only where the corporate entity is a mere instrumentality of another entity or individual, the corporate entity is used to commit a fraud or wrong, and there has been unjust loss or injury to the plaintiff.

3. ACTIONS — FRIVOLOUS ACTIONS — SANCTIONS.

An action is frivolous, justifying an award of costs and attorney fees, where the plaintiff's primary purpose was to harass, embarrass, or injure the prevailing defendant, the plaintiff had no reasonable basis to believe that the underlying facts were true, or the plaintiff's position was devoid of arguable legal merit; a trial court's finding that a claim is frivolous will not be reversed on appeal unless it is clearly erroneous (MCR 2.625[A] [2]; MCL 600.2591; MSA 27A.2591).

*Hertz, Scham & Saretsky, P.C.* (by *Robert S. Hertzberg*), for the plaintiff.

*Dean & Fulkerson, P.C.* (by *George J. Fulkerson*), for the defendant.

Before: HOLBROOK, JR., P.J., and MCDONALD and R. L. EVANS,* JJ.

HOLBROOK, JR., P.J. Plaintiff appeals as of right from an order of the Oakland Circuit Court, which granted summary disposition to defendant pursuant to MCR 2.116(C)(8), for failure to state a claim upon which relief could be granted. Defendant cross appeals from the trial court's denial of its

---

* Recorder's Court judge, sitting on the Court of Appeals by assignment.

motion for costs and attorney fees, which were sought on the basis that plaintiff's action was frivolous. We affirm.

Plaintiff leased space to operate a supermarket in a shopping center owned by defendant. Plaintiff and defendant executed the lease on June 17, 1982, with the original term to be from October 1, 1985, to September 30, 1990. Plaintiff had two renewal options that, if exercised, would allow it to continue leasing the property until September 30, 2000.

The last paragraph of the lease, entitled "Right of First Refusal," provided as follows:

> Landlord agrees to offer to tenant right of first refusal of any bona fide offer to purchase premises described herein during the term of lease and further provided Tenant exercises option to purchase within ten (10) days from date of notification from Landlord of said offer to purchase, under the same terms and conditions and with payment of the same security deposit as provided in said offer.

Plaintiff filed a complaint on April 21, 1992, seeking specific performance of its right of first refusal to purchase the parcel of real property leased from defendant. In its complaint, plaintiff alleged that it had uncovered a "scheme" by defendant's officers or agents "to circumvent LaRose's right of first refusal," and that defendant had "taken steps" to convey plaintiff's demised property by selling the capital stock of defendant corporation to Robert Kato.[1]

Following some discovery, the court granted

---

[1] Although not alleged in plaintiff's complaint—and therefore not subject to consideration under a motion for summary disposition brought under MCR 2.116(C)(8)—we note for clarification purposes only that, at the time the lease was executed, defendant's corporate stock was owned entirely by James and Helene Raisin. On January 11, 1990, the Raisins sold all the stock to Robert Kato.

defendant's motion for summary disposition, but denied its motion for sanctions.

## I

The principal issue presented is one of first impression in this state, requiring us to decide whether the sale of all of a corporate lessor's stock constitutes a "sale" of the corporation's real property triggering a lessee's right of first refusal to purchase the demised property. We agree with defendant and the overwhelming majority of courts of other jurisdictions that have addressed this issue, and conclude that it does not.

## A

A motion for summary disposition under MCR 2.116(C)(8) for failure to state a claim tests the legal sufficiency of a claim and is decided only by reference to the pleadings. *Patterson v Kleiman,* 447 Mich 429, 432; 526 NW2d 879 (1994). If the claim is so clearly unenforceable as a matter of law that no factual development could justify recovery, the motion should be granted. *Holland v Liedel,* 197 Mich App 60, 63-64; 494 NW2d 772 (1992). This Court reviews a summary disposition determination de novo as a question of law. *Bor-*

According to an affidavit of Vaughn LaRose, an officer of plaintiff corporation, he initiated a telephone call during the "winter of 1990" to James Raisin, who told LaRose that he planned to sell the property. When LaRose stated that plaintiff had a right of first refusal, Raisin said, "No you don't. I'm going to structure it so that you don't get the right of first refusal." LaRose further averred that, during the "summer of 1990," Kato met with Vaughn LaRose and his father to discuss purchasing plaintiff's business. Kato's offer was unacceptable and negotiations ceased.

Although it is unclear from the time frames provided in Vaughn LaRose's affidavit whether the sale of stock occurred before or after Kato approached LaRose and his father about purchasing the business, plaintiff asserts in its brief on appeal that the discussion with Kato occurred first.

man v *State Farm Fire & Casualty Co,* 198 Mich App 675, 678; 499 NW2d 419 (1993), aff'd 446 Mich 482; 521 NW2d 266 (1994).

**B**

A provision in a leasehold contract providing a tenant with a right of first refusal to purchase the demised property is valid in Michigan. *Nu-Way Service Stations, Inc v Vandenberg Bros Oil Co,* 283 Mich 551; 278 NW 683 (1938). Consistent with construction of contracts in general, rights of first refusal are to be interpreted narrowly. *Frandsen v Jensen-Sundquist Agency, Inc,* 802 F2d 941 (CA 7, 1986).

**C**

In *K C S, Ltd v East Main Street Land Development Corp,* 40 Md App 196; 388 A2d 181 (1978), the stockholders of a corporate landlord sold all the shares in the corporation to two individuals who had previously expressed an interest in purchasing land owned by the corporation. The lessee of the property sued to enjoin the sale. The appellate court held that the lawsuit had been properly dismissed inasmuch as the sale had encompassed the stock and not the real estate. *Id.* at 199. The court explained:

> Tenant is in no worse position than it was before the sale of the stock. Tenant still possesses all the rights and privileges conferred on it by the lease, including the "right of first refusal" to purchase the property demised to the Tenant.
> There appears to be a dearth of cases dealing with the issue raised by Tenant . . . . Perhaps this is true, because, as one authority suggests, the answer is usually obvious. Annot., 70 ALR3d 203,

206 (1976). We think it obvious in the matter now before us. . . . If, perchance, a large corporation with a multitude of stockholders entered into a lease . . . no one would seriously contend that a transfer of some of the corporate stock from a seller thereof to a buyer would operate so as to trigger [a] "right of first refusal" on the theory that the sale of the stock is the equivalent to a sale of the demised premises. Yet, the only difference between that hypothetical and the case *sub judice* is the quantity of the stock being sold. The fact that as a result of the stock sale the control of the corporate landlord will be altered did not change the ownership of the East Main Street property. [*Id.* at 199-200. Citations omitted.]

See also *Cruising World, Inc v Westermeyer,* 351 So 2d 371 (Fla Dist Ct App, 1977), cert den 361 So 2d 836 (Fla, 1978); *Torrey Delivery, Inc v Chautauqua Truck Sales & Service, Inc,* 47 AD2d 279; 366 NYS2d 506 (1975).

We find the reasoning of the above cases to be persuasive and hold that a corporate lessor's stock sale, standing alone, does not constitute a "sale" of corporate real estate triggering a lessee's right of first refusal to purchase the demised property.

II

In its complaint, plaintiff alleges that the sale of stock in this case was a scheme by defendant's owners or agents to circumvent plaintiff's right of first refusal under the lease.[2] Thus, plaintiff asserts that equity requires us to examine the motives of defendant's corporate owners in making the stock sale to Kato.

---

[2] We note that plaintiff's counsel explained at the summary disposition motion hearing that plaintiff's cause of action was for breach of contract, not fraud.

A

Plaintiff asks this Court not to follow *K C S, Ltd, supra,* arguing that the court ignored the apparent subterfuge involved in the sale. However, we find that the court in that case was fully apprised of the buyers' original desire to purchase the real estate rather than the stock, as well as the fact that they bought the stock for the same price they had offered to buy the land. *Id.* at 197-198. Similarly, the court in *Cruising World, Inc, supra,* was aware that the stock purchaser had originally inquired about purchasing the land, which was adjacent to the buyer's land. *Id.* at 372. Neither court entered into the equitable analysis proposed by plaintiff.

Other cases have examined the motives of the corporate owners in making a stock sale. For example, in *Prince v Elm Investment Co, Inc,* 649 P2d 820 (Utah, 1982), the Utah Supreme Court agreed that a sale of stock generally should not be equated with a sale of corporate assets, but went on to note:

> Although a transfer of corporate stock to a stranger to the lease may not be a "sale," and a transfer [of land] from a corporation to its stockholders (or vice versa) may not be a "sale," there would probably be a sale if these two steps occurred in sequence according to a pre-arranged plan. Otherwise, a lessor could incorporate and sell the stock [sic, "land" is intended] to himself individually, and the parties would have accomplished in a step transaction what they could not have accomplished directly. [*Id.* at 823, n 3.]

Absent a showing of bad faith or wrongdoing on the part of the corporate lessor, such multistep transactions do not trigger a lessee's right of first

refusal. See *Power Test Petroleum Distributors, Inc v Baker-Tripi Realty Corp,* 190 AD2d 845; 594 NYS2d 266 (1993); *Kings Antiques Corp v Varsity Properties, Inc,* 121 AD2d 885; 503 NYS2d 575 (1986), app dis 70 NY2d 641 (1987); *Midland Container Corp v Sophia Realty Corp,* 65 AD2d 784; 410 NYS2d 638 (1978). Cf. *Frandsen, supra* at 946-947.

In harmonizing a number of cases presenting a variety of transactions, the *Prince* court formulated a rule:

> [F]or purposes of a right of first refusal, a "sale" occurs upon the transfer (a) for value (b) of a significant interest in the subject property (c) to a stranger to the lease, (d) who thereby gains substantial control over the leased property. [*Id.* at 823.]

See also *Belliveau v O'Coin,* 557 A2d 75 (RI, 1989) (finding no sale where conveyance of a parcel of property to the corporation was not made at arms' length and was "solely for legitimate tax-avoidance reasons"); *Sand v London & Co, Inc,* 39 NJ Super 513; 121 A2d 559 (1956) (same); *Kroehnke v Zimmerman,* 171 Colo 365; 467 P2d 265 (1970) (same; conveyance was "solely for the convenience of the lessors in managing the property"). From these cases and the *Prince* court's analysis, we discern that where a sale of property occurs between an individual and a corporation, rather than a mere corporate stock transfer, equitable considerations such as the parties' motives for the sale and the relationship between the parties become relevant. These considerations are not relevant to a stock sale because the identity of the corporate landord does not change

Here, plaintiff asserts that the transfer of defendant's corporate stock to Kato constituted the first

step in a prearranged plan to deprive plaintiff of its right of first refusal. The second step, presumably, would involve a conveyance of the demised property from defendant corporation to Kato as an individual. Plaintiff concedes, however, that this second step has not occurred; therefore, without evidence of some injury, plaintiff has presented no grounds for equity to intercede. Moreover, because plaintiff contracted with defendant corporation, not with the shareholders as individuals, the mere change in identity of the corporate shareholders did not trigger plaintiff's right of first refusal.

B

The above doctrine also disposes of plaintiff's attempt to pierce defendant's corporate veil. This Court will ignore a corporate identity only where three prerequisites are satisfied:

> First, the corporate entity must be a mere instrumentality of another entity or individual. Second, the corporate entity must be used to commit a fraud or wrong. Third, there must have been an unjust loss or injury to the plaintiff. [*Nogueras v Maisel & Associates of Michigan,* 142 Mich App 71, 86; 369 NW2d 492 (1985).]

Here, defendant corporation has not been used to commit a fraud or wrong. The sale of stock to Kato was proper, notwithstanding plaintiff's evidence that Kato was originally interested in ownership of the land. *K C S, Ltd, supra; Cruising World, Inc, supra.* Moreover, plaintiff cannot show an unjust loss or injury. Plaintiff is in the exact same position it was before the stock sale to Kato. See *K C S, Ltd, supra* at 199.

Because plaintiff has failed to allege fraud on the part of defendant's corporate owners, and Kato

has not attempted to transfer ownership of the leased property to himself as an individual or offered the property for sale to a third party, plaintiff's lawsuit seeking specific performance was premature, and summary disposition was properly granted.

III

In its cross appeal, defendant asserts that plaintiff's lawsuit was frivolous and on that basis the trial court erred in denying its motion for costs and attorney fees. A trial court's finding that a claim is frivolous will not be reversed on appeal unless clearly erroneous. *Attorney General ex rel Director of Dep't of Natural Resources v Acme Disposal Co,* 189 Mich App 722, 728; 473 NW2d 824 (1991). We find no clear error.

An attorney has an affirmative duty to conduct a reasonable inquiry into the factual and legal viability of a pleading before it is signed. MCR 2.114(D); *Davids v Davis,* 179 Mich App 72, 89; 445 NW2d 460 (1989). The reasonableness of the inquiry is determined by an objective standard and depends on the particular facts and circumstances of the case. *Id.* In addition, MCR 2.625(A)(2) mandates that a court tax costs, as provided by MCL 600.2591; MSA 27A.2591, to reimburse a prevailing party for its costs incurred during the course of frivolous litigation. *Davids, supra; Wells v Dep't of Corrections,* 447 Mich 415, 419; 523 NW2d 217 (1994). A claim is frivolous when (1) the party's primary purpose was to harass, embarrass, or injure the prevailing party; (2) the party had no reasonable basis to believe that the underlying facts were true; or (3) the party's position was devoid of arguable legal merit. MCL 600.2591(3)(a); MSA 27A.2591(3)(a).

In light of plaintiff's allegations of an unexecuted plan to circumvent its right of first refusal, and the lack of Michigan precedent regarding the principal issue raised in this case, we find no clear error in the trial court's refusal to impose sanctions.

Affirmed.