NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 06a0897n.06
Filed: December 15, 2006

No. 05-1679

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

RAYMOND A. EVANS and ALBERT W. )
EVANS, Trustee of Trust A under )
Declaration of Trust dated July 11, 1991, )
                                          )
        Plaintiffs/Counter-Defendants/    )   ON APPEAL FROM THE UNITED
        Appellees,                        )   STATES DISTRICT COURT FOR
                                          )   THE EASTERN DISTRICT OF
v.                                        )   MICHIGAN
                                          )
SC SOUTHFIELD TWELVE                      )
ASSOCIATES, LLC, a Michigan limited       )
liability company,                        )

        Defendant/Counter-
        Plaintiff/Appellant.


Before:  GIBBONS and ROGERS, Circuit Judges; HOLSCHUH, District Judge.[*]


        **JOHN D. HOLSCHUH, District Judge.**  Appellees filed a declaratory judgment action

seeking a declaration that their proposed transfer of interest in commercial property did not

trigger appellant's right of first refusal under the terms of the commercial lease.  This is an appeal

from the district court's order granting appellees' motion for summary judgment, denying

appellant's motion for partial summary judgment, and dismissing appellant's counterclaim with

prejudice.  Appellant argues that the district court erred in concluding that the right of first

_____

        [*] The Honorable John D. Holschuh, United States District Judge for the Southern District
of Ohio, sitting by designation.

refusal was not triggered. It also argues that the order dismissing the counterclaim in its entirety was overly broad. For the following reasons, we affirm with respect to the trial court's judgment on the cross-motions for summary judgment, but reverse and remand with respect to the trial court's dismissal with prejudice of the entire counterclaim of the appellant.

## I.

On July 11, 1969, Second Greenfield Corporation and Federal Hardware & Supply, Inc. entered into a long-term commercial lease whereby Federal Hardware agreed to rent space in a shopping center owned by Second Greenfield. Paragraph 25 of the commercial lease grants Federal Hardware a right of first refusal. It reads as follows:

> In the event that Landlord, or any successor landlord or owner of the demised premises, shall at any time desire to sell the demised premises and shall have received a bona fide written offer for the purchase thereof, such party shall, within five (5) days after the receipt of the offer, transmit an executed copy of the offer . . . to the Tenant. The Tenant shall thereupon have the right . . . to purchase the interest of the then landlord or owner at the same price and on the same terms as the offer. . .

J.A. at 75.

Not all transfers of interest, however, were to trigger this right of first refusal. Paragraph 25 goes on to state:

> [S]uch right of first refusal shall not be applicable in the event of a sale or transfer of the demised premises by the Landlord (as the term "Landlord" is defined in Paragraph 11 hereof) to any of its officers, directors and principal shareholders or to any corporations and/or other entities in which Landlord shall have any substantial interest.

*Id.*

Shortly after the lease was signed, the original landlord, Second Greenfield, conveyed its

2

interest in the property to Richard Evans and Albert W. Evans. The property has remained in the Evans family but, over the years, there have been numerous intra-family transfers of interest. The key issue in this case is whether these transfers of interest triggered the right of first refusal.

In 1997, the original tenant, Federal Hardware, assigned its interest in the lease to appellant, SC Southfield Twelve Associates, LLC. At that time, Raymond Evans owned a 75% interest in the property. Albert W. Evans, Trustee of Trust A under Declaration of Trust dated July 11, 1991, owned the remaining 25% interest.[1] In 1997, SC Southfield filed suit against the Evans, alleging that the previous intra-family transfers of interest had triggered the right of first refusal. SC Southfield argued that since no money had exchanged hands during those intra-family transfers, SC Southfield was now entitled to "purchase" the property under identical terms and conditions, *i.e.*, for nothing.

The parties resolved that litigation by consent judgment and a "settlement agreement and amendment to lease agreement." The settlement agreement specifically recognized that SC Southfield was the Tenant and the Evans were the owners of the property and successors-in-interest to the rights and obligations of the Landlord under the lease. While SC Southfield agreed to dismiss its claims concerning the right of first refusal, it reserved the right to raise the issue again if the Evans subsequently transferred their interest in the property.

On April 21, 2003, Raymond Evans sent a letter to SC Southfield, stating that he and Albert were planning to transfer their individual interests in the property to Talrae Holdings, LLC, a Nevada limited liability company. In direct proportion to their individual ownership

_____

[1] Raymond Evans and Albert W. Evans, Trustee, will hereafter be referred to as "the Evans."

3

interests, Raymond was to own 75% of Talrae and Albert, as Trustee, was to own the other 25%. While the Evans did not believe that it was necessary under these circumstances to obtain SC Southfield's approval for the proposed transfer of interest, they nevertheless asked for its written consent "to avoid confusion in the future."

When SC Southfield refused to sign the consent form, the Evans filed a declaratory judgment action in the United States District Court for the Eastern District of Michigan, seeking a declaration that the proposed transfer of interest to Talrae did not trigger the right of first refusal. The Evans noted that they did not "desire to sell" the property and had no "bona fide written offer for the purchase" of the property. Moreover, no money was exchanging hands. They were simply transferring their individual interests to their own limited liability company. According to the Evans, since they would own a "substantial interest" in the new company, the proposed transfer was exempt and did not trigger the right of first refusal.

SC Southfield filed a counterclaim consisting of two counts. The first was entitled "Suit for Specific Performance." SC Southfield alleged that the proposed transfer of interest to Talrae constituted a "desire to sell" and triggered the right of first refusal. It further alleged that by refusing to honor the right of first refusal, the Evans had breached their obligations under the lease. SC Southfield asked the district court to enforce the terms of the lease by ordering the Evans to provide a copy of the documents reflecting the terms of the proposed transaction, and to give SC Southfield thirty days to "purchase" the Evans' interests at the same price and on the same terms offered to Talrae, *i.e.*, for nothing. The second count of the counterclaim, entitled "Breach of Contract," simply alleged that the Evans had breached their obligations under the lease and that SC Southfield had suffered damages as a result.

4

The parties filed cross-motions for summary judgment. After oral arguments and additional briefing, the district court entered judgment in favor of the Evans. The district court found that the proposed transfer of interest from the Evans to Talrae did not trigger the right of first refusal because the Evans did not "desire to sell" the property and there was no bona fide written offer by Talrae to purchase the property. In the alternative, the district court found that the proposed transaction was exempt since the Evans were transferring their interests in the property to Talrae, an entity in which they had a substantial interest. Based on these findings, the district court granted the Evans' motion for summary judgment, denied SC Southfield's motion for partial summary judgment, and dismissed SC Southfield's counterclaim in its entirety with prejudice. SC Southfield appealed.

## II.

We review a district court's order granting summary judgment *de novo*. *Johnson v. Karnes*, 398 F.3d 868, 873 (6th Cir. 2005). Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In reviewing the district court's order, this court must draw all reasonable inferences in favor of the non-moving party. *Johnson*, 398 F.3d at 873.

## III.

On appeal, SC Southfield argues that: (A) the district court erred in holding that the proposed transfer from the Evans to Talrae did not trigger the right of first refusal; and (B) the district court erred in dismissing SC Southfield's counterclaim in its entirety.

5

## A.

The first issue is whether the district court properly granted summary judgment in favor of the Evans on the issue of whether their proposed transfer of interest to Talrae triggered the right of first refusal. As noted above, the district court found that the right of first refusal was not triggered because: (1) the proposed transfer of interest between the Evans and Talrae did not constitute a "desire to sell" and there was no "bona fide written offer" to purchase the property; and (2) the transaction was exempt because the Evans would own a substantial interest in Talrae. We affirm on both grounds.

### 1.

Pursuant to the terms of the lease, the right of first refusal is triggered only if the landlord: (1) "desire[s] to sell" the property; and (2) receives a "bona fide written offer" to purchase it. Michigan courts have held that a contract provision containing a right of first refusal must be interpreted narrowly. *LaRose Market, Inc. v. Sylvan Center, Inc.*, 530 N.W.2d 505, 507 (Mich. Ct. App. 1995).[2] The district court, in this case, found that SC Southfield's right of first refusal was not triggered since the Evans neither desired to sell the property nor received a bona fide written offer to purchase it. SC Southfield appeals both findings.

SC Southfield first argues that the Evans' desire to transfer their interest in the property to Talrae constituted a "desire to sell." It notes that Michigan courts have defined a "sale" as "a parting with one's interest in a thing for a valuable consideration." *Steadman v. Clemens*, 32 N.W.2d 45, 48 (Mich. 1948) (quoting *Western Massachusetts Ins. Co. v. Riker*, 10 Mich. 279,

---

[2] As a district court exercising diversity jurisdiction, the court was bound to apply Michigan law. *See Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938).

281 (Mich. 1862)). It is undisputed that the Evans planned to part with their individual interests in the property; the relevant question is whether the proposed transfer was supported by valuable consideration.

As the Supreme Court of Michigan has noted, "[t]o have consideration there must be a bargained-for exchange. There must be 'a benefit on one side, or a detriment suffered, or service done on the other.' Courts do not generally inquire into the sufficiency of consideration." *General Motors Corp. v. Department of Treasury*, 644 N.W.2d 734, 738 (Mich. 2002) (internal citations omitted).

SC Southfield argues that it does not matter that Talrae did not intend to pay the Evans any money for the property. It contends that valuable consideration exists because by transferring their individual interests in the property to Talrae, the Evans received the benefit of limiting their personal liability for claims related to the property. The district court correctly rejected this argument. Any benefit the Evans received by transferring their interests to a limited liability company arose by operation of the laws of the State of Nevada. There was no bargained-for exchange.

SC Southfield further argues that Talrae suffered a detriment because, as the new property owner, it would be burdened with contractual obligations as the successor landlord. Not surprisingly, SC Southfield cites to no authority for this proposition. Like paying property taxes, these obligations are incidental to property ownership. Talrae did not agree to assume the contractual obligations as successor landlord *in exchange for* title to the property. Because Talrae suffered no detriment and gave nothing to the Evans in exchange for the property, the district court did not err in finding that there was no consideration to support a "sale."

7

Moreover, while Michigan does not appear to have directly addressed the issue, many other courts have held that the transfer of interest from individual owners to another entity controlled by those same individuals does not constitute a "sale" that triggers a right of first refusal. *See, e.g., Creque v. Texaco Antilles Ltd.*, 409 F.3d 150, 155 (3d Cir. 2005) ("A right of first refusal to purchase real property is not triggered by the mere conveyance of that property. Only when the conveyance is marked by arms' length dealing and a change in control of the property may that right be exercised."); *McGuire v. Lowery*, 2 P.3d 527, 532 (Wyo. 2000) ("for a transaction to constitute a 'sale' and trigger a first right of refusal, it must involve an arms-length transaction resulting in an actual change in control of the burdened property rather than simply moving it from the individual owners to an entity controlled by them."); *Wallasey Tenants Ass'n v. Varner*, 892 A.2d 1135 (D.C. 2006) (holding that transfer of property from an individual to a corporation wholly owned by the same individual was not a sale triggering a right of first refusal); *Kroehnke v. Zimmerman*, 467 P.2d 265 (Colo. 1970) (transfer of interest in real property from individual owners to corporation in which they owned all the stock did not trigger right of first refusal). It is beyond dispute that the proposed transfer of interest from the Evans to Talrae was not the result of arms' length dealing and would not result in any real change in control of the property. Under these circumstances, we agree that the right of first refusal was not triggered.

In addition to finding no genuine issue of material fact concerning the Evans' "desire to sell," the district court also found no genuine issue of material fact concerning whether there was a bona fide written offer by Talrae to purchase the property. SC Southfield had argued that Raymond Evans' affidavit, submitted in support of the Evans' motion for summary judgment, memorialized the terms of the proposed transfer of interest and should, therefore, be interpreted

8

as a bona fide written offer to purchase the property. The district court properly rejected this claim, noting that Raymond Evans specifically stated in that affidavit that he had not received a bona fide written offer of purchase, and noting that SC Southfield had presented no evidence to the contrary.

On appeal, SC Southfield argues that it is inequitable to permit the Evans to avoid the right of first refusal by simply refusing to reduce the purchase offer to writing. SC Southfield alleges that the Evans have devised a multi-step scheme to convey their interest in the property without ever triggering SC Southfield's right of first refusal. The consent agreement the Evans asked SC Southfield to sign states that Raymond Evans and Albert W. Evans, Trustee, will "initially be the sole members" of Talrae. Based on this statement, SC Southfield speculates that the Evans intend to later convey their ownership in Talrae, and hence ownership of the property, to others. Under Michigan law, unless SC Southfield could prove bad faith or wrongdoing, such a conveyance would not trigger the right of first refusal. *See LaRose Market*, 530 N.W.2d at 508-09 (holding that sale of corporate stock, as opposed to sale of the real property owned by the corporation, would not trigger the right of first refusal).

The court need not speculate concerning the Evans' future plans for ownership of Talrae. The only issue currently before the Court is whether the proposed transfer of interest from the Evans to Talrae triggers the right of first refusal. SC Southfield is correct that the court must take equitable considerations into account. In *LaRose Market*, the court noted that when an individual sells his property to a corporation, "equitable considerations such as the parties' motives for the sale and the relationship between the parties become relevant." *Id.* at 509. In this case, however, there is no evidence of an illicit motive. Raymond Evans stated in his affidavit that he

9

and the Trust want to transfer their interests to a limited liability company to protect their personal assets while preserving the same tax status. There is simply no evidence in the record to support a finding that the proposed transfer was instead the first step in an elaborate scheme to deprive SC Southfield of its right of first refusal. SC Southfield's speculations are insufficient to survive summary judgment.

Upon *de novo* review, we conclude that the district court correctly found that the proposed transfer of interest from the Evans to Talrae did not trigger the right of first refusal. The Evans did not "desire to sell" the property and did not receive a "bona fide written offer" of purchase. Moreover, under the circumstances presented here, equity does not require a different result.

**2.**

Even if we found that the Evans "desired to sell" the property and had received a "bona fide written offer" of purchase from Talrae, we would nevertheless affirm on the alternate ground that the proposed transaction is contractually exempt from the right of first refusal. As noted above, paragraph 25 of the lease expressly states that the right of first refusal does not apply "in the event of a sale or transfer of the demised premises by the Landlord (as the term "Landlord" is defined in Paragraph 11 hereof) to any of its officers, directors and principal shareholders or to any corporations and/or other entities in which Landlord shall have any substantial interest."

It is undisputed that the Evans planned to transfer their entire interest in the property to Talrae, a limited liability company in which they would own a "substantial interest." SC Southfield nevertheless argues that the exception is inapplicable because the Evans fall outside the definition of "Landlord" as defined in paragraph 11 of the lease. That paragraph reads as

10

follows:

> As used in this Paragraph 11, the term "Landlord" is defined as and shall include all of the following persons and entities, jointly and severally: (i) Landlord shall include the person(s) and or entity(ies) designated as Landlord at Page 1 of this Lease, jointly and severally; (ii) if the Landlord designated at Page 1 is a corporation, Landlord shall include all officers, directors and principal shareholders thereof, jointly and severally, and also all corporations and/or other entities in which Landlord or its officers, directors, or principal shareholders, jointly and severally, shall have any substantial interest; (iii) if the Landlord designated at Page 1 is or consists of one or more individuals and/or any unincorporated entity(ies), Landlord shall include all corporations and/or other entities in which such individual(s), entity(ies), or any members of such unincorporated entity(ies), jointly and severally, shall have any substantial interest.

According to SC Southfield, because Second Greenfield is the only entity designated as "Landlord" on page 1 of the lease, the exception to the right of first refusal was intended to apply only to Second Greenfield and not to any successors-in-interest.

The district court correctly rejected this argument. First, the definition of "Landlord" contained in paragraph 11 is not *limited to* the entity designated on page 1 of the lease; instead, the provision states that the term "Landlord" "*shall include*" the entity designated on page 1. Second, the definition implicitly contemplates that the identity of the "Landlord" may change over time; it contains separate provisions depending on whether the "Landlord" is a corporation or an individual. More importantly, as the district court noted, "the Settlement Agreement and Second Amendment to the Lease Agreement, signed by Defendant and Plaintiffs on April 16, 1998, expressly states that Raymond A. Evans and Albert W. Evans are 'the successors-in-interest to the rights and obligations of the Landlord under the Master Lease, and fee owners of

11

the Property.'" J.A. at 42. As we read the amendment, the parties expressly agreed that the Evans acquired all of the rights and obligations of the original landlord, including the right to invoke the exception to the right of first refusal.

Upon *de novo* review, we conclude that the district court properly found that the proposed transfer was an exempt transaction and did not trigger the right of first refusal.

**B.**

The second issue SC Southfield raises on appeal concerns the district court's dismissal of SC Southfield's counterclaim in its entirety. SC Southfield argues that the district court's order was overly broad. The district court dismissed not only the portions of the counterclaim that related to the right of first refusal, which was the sole subject of the cross-motions for summary judgment, but also the breach of contract counterclaim which, according to SC Southfield, encompassed additional breaches not addressed by the parties in their motions for summary judgment or by the district court in its opinion.

As noted above, SC Southfield's counterclaim consisted of two counts. Count I sought specific performance of the right of first refusal, and included detailed factual allegations concerning the proposed transfer of interest from the Evans to Talrae. Count II was entitled "Breach of Contract." It simply alleged that the lease was a binding contract, that SC Southfield had performed all of its obligations, that the Evans had breached their obligations and that, as a result, SC Southfield had suffered monetary damages in an amount not yet determined. In terms of organizational structure, Count II stood alone and did not expressly incorporate any of the factual allegations contained in Count I. Moreover, there is no indication that SC Southfield was seeking damages for breach of contract only as alternative relief to the specific performance

requested in Count I.

Nevertheless, the Evans interpreted the breach of contract claim as nothing more than the "damages" counterpart to the suit for specific performance. They conducted no additional discovery on the breach of contract claim. The Evans moved for summary judgment on their declaratory judgment action and "entry of an order dismissing the defendant's counter complaint in which defendant contends that plaintiffs' announced intentions to transfer their ownership interests into a limited liability company triggers in defendant a right of first refusal to purchase the subject property." J.A. at 130.

SC Southfield filed a response to the Evans' motion for summary judgment along with its own "motion for partial summary judgment." In the accompanying memorandum, referring to the counterclaim, SC Southfield stated in a footnote, "[t]he breach of contract by Plaintiffs is not limited to the wrongful refusal to honor the Right of First Refusal, but also extends to other breaches, including Plaintiffs' failure to construct additional improvements to the Property as required by the Master Lease." J.A. at 316-17. SC Southfield's motion for partial summary judgment, however, was limited solely to the question of whether the proposed transfer of interest triggered the right of first refusal.

After finding that the proposed transfer of interest did not trigger the right of first refusal, the district court granted summary judgment in favor of the Evans. With no further discussion, the district court summarily dismissed SC Southfield's entire counterclaim with prejudice. SC Southfield did not file a motion to alter or amend the judgment, but instead filed its notice of

13

appeal.[3]

On appeal, SC Southfield argues that dismissal of the entire counterclaim was overly broad and premature since neither party had moved for summary judgment on Count II of the counterclaim, and the district court's opinion was limited to the question of whether the proposed transfer of interest triggered the right of first refusal. SC Southfield therefore urges this court to remand the case for further proceedings.

In response, the Evans argue that the district court properly dismissed the entire counterclaim since the breach of contract claim was simply an alternate theory of recovery, *i.e.,* the "damages" counterpart to the suit for specific performance. Therefore, once the district court found that the proposed transfer of interest did not trigger the right of first refusal, there was no need to consider the breach of contract claim. The Evans also argue that nothing in the counterclaim itself would have put the district court on notice that the breach of contract claim encompassed anything other than the right of first refusal. The counterclaim is devoid of any factual allegations concerning the specific alleged breaches.

SC Southfield notes, however, that Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." The Supreme Court has held that the plaintiff must simply "give the defendant fair notice of what the plaintiff's claim is and the grounds on which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). It must contain either direct or inferential allegations with respect to all material elements necessary to sustain a recovery under some viable theory. *Allard v. Weitzman (In re DeLorean*

---

[3] Contrary to the Evans' argument, SC Southfield was not required to bring the alleged error to the attention of the district court prior to filing its notice of appeal. It had a final, appealable order disposing of the entire case. That is all that was required.

*Motor Co.*), 991 F.2d 1236, 1240 (6th Cir. 1993). The discovery process then provides the avenue by which the parties identify and refine the specific claims and issues. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002).[4]

The dissent concludes that the allegations contained in Count II of the counterclaim fail to state a claim for breach of contract because SC Southfield neglects in Count II to set forth the specific grounds on which the claim rests. However, appellees did not move in the district court to dismiss Count II, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for failure to state a claim upon which relief may be granted; the dissent's rationale was not argued in the district court; and the district court made no such finding. Instead, the district court simply summarily dismissed both counts of the counterclaim with prejudice, without any discussion of the basis for such a dismissal. It is likely that the district court concentrated on the only issue that was fully briefed and argued – the question of whether the right of first refusal had been triggered – and that the district court simply overlooked the question of monetary damages for any other alleged breach of contract as set forth in Count II of the counterclaim.

Rather than speculate, however, we conclude that in the absence of a decision by the district court specifically addressing Count II of the counterclaim, summary judgment on that count should be vacated and the count remanded to the district court for further proceedings in accordance with this opinion.

**IV.**

Upon *de novo* review, we affirm the district court's judgment granting the Evans' motion

---

[4] SC Southfield contends that if the Evans had conducted any discovery on the breach of contract claim, they would have discovered its true scope.

for summary judgment and denying SC Southfield's motion for partial summary judgment on the issue of SC Southfield's alleged right of first refusal under its lease. However, because the district court erred in dismissing SC Southfield's counterclaim with prejudice in its entirety, we reverse and remand for further consideration the alleged remainder of the breach of contract claim set forth in Count II of the counterclaim, exclusive of any claim that the Evans breached the lease in question by refusing to grant SC Southfield a right of first refusal.

**JULIA SMITH GIBBONS, Circuit Judge, concurring in part and dissenting in part.**

I concur fully in Parts I, II, and III.A. of the majority opinion but disagree with its disposition of the counterclaim in Part III.B. I cannot read SC Southfield's counterclaim for breach of contract as putting the Evans on notice that SC Southfield asserted any breach other than a breach of the right of first refusal clause.

The entirety of the breach of contract claim is:

18. The Master Lease constitutes a binding contract between the parties.
19. SC Southfield has performed all of its obligations under the Master Lease.
20. Plaintiffs/Counter-Defendants have breached their obligations under the Master Lease.
21. As a consequence of the breach by Plaintiffs/Counter-Defendants of their obligations under the Master Lease, SC Southfield has suffered damages in an amount not yet determined, but believed to be in excess of $1.4 Million.

In my view, these allegations alone, even under liberal pleading requirements, do not state a claim. As the majority opinion notes, "the plaintiff must simply 'give the defendant fair notice of what the plaintiff's claim is and the grounds on which it rests.' *Conley v. Gibson*, 355 U.S. 41, 47 (1957). It must contain either direct or inferential allegations with respect to all material elements necessary to sustain a recovery under some viable theory. *Allard v. Weitzman (In re DeLorean Motor Co.)*, 991 F.2d 1236, 1240 (6th Cir. 1993)." (Op. 14.) These allegations fail that standard. While they provide notice of the claim, they do not provide notice of the "grounds on which it rests." Rather, the allegations are legal conclusions. While one could read these allegations with the rest of the complaint as asserting a violation of the right of first refusal provision, SC Southfield has not alleged any facts supporting a claim of some other breach. Nothing about the counterclaim would put the Evans on notice that some other breach was claimed. Thus, it is hardly surprising that no discovery was done on such a claim, that the Evans

17

did not mention any other claim in their summary judgment motion, and that the district court did not refer to any other claim in its order.

Because the only interpretation of the counterclaim under which a claim for breach of contract is stated incorporates the right of first refusal provision, it is also unsurprising that the Evans did not move to dismiss Count II, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for failure to state a claim upon which relief may be granted. The Evans did, however, move for summary judgment on the entirety of the counterclaim of which they were provided notice. Any allegation that SC Southfield was unaware that the entire counterclaim was subject to judgment is disingenuous. SC Southfield included a footnote in its response to the motion for summary judgment claiming other bases for the breach of contract claim because it recognized the entire counterclaim was at risk. It did not seek to amend its complaint to state a claim. This last-minute footnote cannot substitute for a proper pleading and cannot provide a basis on which SC Southfield can avoid entry of summary judgment on its entire counterclaim.

I would affirm the district court's dismissal of the counterclaim in its entirety and dissent from the majority's decision to remand the counterclaim for consideration of some unpleaded breach of contract claim.