NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0194n.06

No. 23-1726

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
May 01, 2024
KELLY L. STEPHENS, Clerk

| | | |
|---|---|---|
| CANADIAN SILICA INDUSTRIES, INC., | ) | |
|     Plaintiff-Appellee, | ) ) ) | |
| GRAYMONT (MI) LLC, | ) | ON APPEAL FROM THE UNITED |
|     Intervening Plaintiff-Appellant, | ) ) | STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF |
| v. | ) ) | MICHIGAN |
| SAND PRODUCTS CORPORATION, a Michigan Corporation, | ) ) ) | OPINION |
|     Defendant-Appellee. | ) ) | |

Before:  BOGGS, KETHLEDGE, and MURPHY, Circuit Judges.

KETHLEDGE, Circuit Judge.  Graymont (MI) LLC argues that a lease agreement between Sand Products Corporation and Canadian Silica Industries, Inc. was de facto a sale agreement— as to which Graymont had a right of first refusal.  The district court disagreed and granted summary judgment to Sand Products.  We affirm.

I.

In describing the facts for purposes of summary judgment, we view the record in the light most favorable to Graymont.  *See Sloat v. Hewlett-Packard Enter. Co.*, 18 F.4th 204, 207 (6th Cir. 2021).  In 2014, Sand Products owned approximately 1,500 acres of land in Michigan's Upper Peninsula, on the shores of Lake Michigan, where it operated a sand mine.  The property was divided into four parcels:  Parcel 1 was the northernmost parcel and was an inactive sand reserve;

Parcel 2 was the mine; Parcel 3 provided entry to a tunnel under U.S. Highway 2, which runs parallel to the shoreline; and Parcel 4—the shoreline parcel—included a processing plant, a conveyor system, a shipping terminal, and a dock. Parcels 3 and 4 together were called the "SPC Facility"; all four parcels together were called the "SPC Property."

In 2014, Sand Products signed a 30-year "Access Agreement" with Graymont, a limestone company. That agreement granted Graymont a non-exclusive right to use the SPC Facility to ship limestone only. The agreement also gave Graymont a right of first refusal: if Sand Products obtained "a bona fide offer to purchase" either "some or all of" the SPC Facility or "all or substantially all of" the SPC Property, Graymont would have up to 60 days to choose "to purchase the offered property upon the same price, terms and conditions."

Two years later, Sand Products offered to sell the industrial dock to Graymont for about $13 million. Graymont declined. The next year, Sand Products began negotiations to sell its sand-mining business to Canadian Silica. In 2017, the two companies signed a non-binding letter of intent for Canadian Silica to purchase the sand-mining business. Sand Products sent that letter to Graymont and offered it the same deal, but Graymont took no action.

Sand Products was careful not to trigger Graymont's right of first refusal when structuring the deal with Canadian Silica. The parties finalized the deal a few months later in 2017. As relevant here, Canadian Silica purchased Parcel 2, received a zero-cost option to purchase part of Parcel 1, and leased Parcels 3 and 4 for about $250,000 a year. That lease had an initial term of 50 years, with options for Canadian Silica to extend the lease for up to two additional terms of 25 years. The lease was non-exclusive and allowed Canadian Silica to use the property only to "mine, process, and ship sand." In addition, among other limitations, Canadian Silica's rights under the lease agreement were "subject and subordinate to the rights of Graymont[,]" and

Canadian Silica could make no changes to the property that would "adversely affect Graymont's rights."

In January 2018, Sand Products, Canadian Silica, and Graymont met in Toronto to discuss their shared use of the property. In 2019, Graymont approached Sand Products about buying the dock; as a part of those negotiations, Sand Products gave Graymont a redacted copy of its lease agreement with Canadian Silica. But again Graymont chose not to buy.

In 2020, Canadian Silica began processing and shipping limestone—not just sand—at the SPC Facility. Sand Products objected and Canadian Silica sued Sand Products, alleging it had breached the lease agreement. Graymont then intervened in the suit, relying upon Canadian Silica's allegations to claim that the lease agreement for the SPC Facility was actually a sale—which would trigger Graymont's right of first refusal. The district court held otherwise, and granted summary judgment to Sand Products. The court also held a bench trial on Canadian Silica's claims, finding that, under the lease agreement, Canadian Silica could not use the property for anything other than sand mining. Graymont then brought this appeal of the court's summary-judgment order.

## II.

We review the district court's grant of summary judgment de novo. *Miles v. S. Cent. Hum. Res. Agency*, 946 F.3d 883, 887 (6th Cir. 2020). The parties agree that Michigan law applies here.

Under Michigan law, courts interpret contracts according to their "plain and ordinary meaning." *In re Smith Tr.*, 745 N.W.2d 754, 758 (Mich. 2008). But Michigan courts interpret rights of first refusal "narrowly." *LaRose Mkt., Inc. v. Sylvan Ctr., Inc.*, 530 N.W.2d 505, 507 (Mich. Ct. App. 1995).

Graymont's argument in this appeal is that Canadian Silica's lease agreement for the SPC Facility was, de facto, a sale of Parcel 3 and 4—which would entitle Graymont to a right of first refusal to purchase those parcels. Here is how the Access Agreement defined that right:

> If SPC obtains a bona fide offer to purchase some or all of the SPC Facility, or all or substantially all of the SPC Property, that is acceptable to it, SPC will deliver to Graymont a written notice (i) stating its intention to transfer the SPC Facility or SPC Property, and (ii) including a copy of the bona fide offer for purchase. Graymont will have the right of first refusal (the "Right of First Refusal") for a period of sixty (60) days after receiving the notice to elect to purchase the offered property upon the same price, terms and conditions of the sale as are contained in SPC's notice.

We set to one side the underlying premise of Graymont's argument—that a lease agreement could amount de facto to a purchase agreement—because in any event Graymont's argument fails on its own terms. Canadian Silica did not "purchase" the SPC Facility de facto any more than it did de jure. For starters, ownership in fee simple brings the right to exclude others, *Eastbrook Homes, Inc. v. Treasury Dep't*, 820 N.W.2d 242, 249 (Mich. Ct. App. 2012); and here, under the lease agreement, Canadian Silica could not exclude Graymont from using the SPC Facility for its limestone business. To the contrary, the lease agreement expressly *subordinated* Canadian Silica's rights to Graymont's rights under the Access Agreement. Moreover—as the district court found after trial (and Graymont here does not dispute)—Canadian Silica could use the SPC Facility only for its sand business. Canadian Silica's rights to the Facility thus differed little from Graymont's own rights: both could use the facility for only a single purpose for a term of years, with the difference being that Graymont's lease ran for 30 years whereas Canadian Silica's ran for 50-plus. Canadian Silica no more purchased the Facility in fee simple than Graymont did.

Moreover, if Graymont had wanted its right of first refusal to apply to long-term leases (like its own), it easily could have drafted language to that effect. *See Commc'n Enhancement,*

*LLC v. T6 Unison Site Mgmt., LLC*, 2012 WL 1890108, at \*4 (Mich. Ct. App. May 22, 2012) (holding that, if "the parties intended that the right of refusal provision be triggered on an offer to convey any interest in the property, the contract could have been worded accordingly"). The district court was right to hold that Canadian Silica leased the SPC Facility rather than purchased it.

Nor does the Michigan Court of Appeals' decision in *LaRose* provide any reason to conclude otherwise. *LaRose* involved a purchase, specifically the purchase of a controlling interest in a company's stock. *LaRose Mkt.*, 530 N.W.2d at 507. The court's opinion says not a word about construing leases as sales—much less leases in which the lessee's rights in real property are subordinated to those of a third party. And whereas *LaRose* tells us to interpret rights of first refusal narrowly, Graymont would have us construe them more broadly than any Michigan court ever has. *Id.* at 508. Indeed, Graymont cites not a single Michigan case where a lease was construed as a sale.

Finally, the remedy Graymont now seeks is patently beyond the right afforded it under the Access Agreement. That agreement expressly limits Graymont's right of first refusal to "the same price, terms and conditions" of a third-party agreement. But here Graymont apparently seeks some kind of forced sale of the SPC Facility to Graymont, rather than to step into Canadian Silica's shoes in the lease agreement. Reply Br. at 18-21. Graymont's appeal is meritless for this reason as well.

The district court's judgment is affirmed.